IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALEJANDRO MARTINEZ PEREZ and CLAUDIA A. LOPEZ OROZCO**, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:20-CV-1389-L** |
| **ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY and STEPHEN MCKINNEY**, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' Motion for Partial Summary Judgment ("Motion") (Doc. 23), filed March 15, 2021. Plaintiffs' Motion and this action pertain to Allstate Vehicle and Property Insurance Company's ("Allstate" or "Defendant") alleged wrongful denial of a claim by Alejandro Martinez Perez and Claudia A. Lopez Orozco ("Plaintiffs") to recover benefits under their Allstate home insurance policy after a October 20, 2019 windstorm damaged their home in Richardson, Texas. Plaintiffs' Motion is limited to their claims against Allstate for breach of contract claim and violations of the Texas Prompt Payment Act ("TPPA"). Allstate did not file a response to Plaintiffs' Motion. The time for doing so has passed, and Allstate did not request an extension of time or move for a continuance pursuant to Federal Rule of Civil Procedure 56(d). In an earlier-filed motion to modify the Scheduling Order to extend the deadline for completing discovery and Allstate's expert designation deadline, Allstate took the position that its requested extension would not require a continuance of other deadlines and would not result in any delay in the proceedings in this case. Accordingly, the court determines that Plaintiffs' Motion is ripe, notwithstanding the

**Memorandum Opinion and Order– Page 1**

lack of a response by Allstate,* and, for the reasons herein explained, **grants** Plaintiffs' Motion with respect to their claims against Allstate for breach of contract and violations of the TPPA.

I.      **Factual and Procedural Background**

Plaintiffs originally filed this action in state court on April 28, 2020, against Allstate and Allstate adjuster Stephen McKinney ("Mr. McKinney") (collectively, "Defendants"), asserting claims for breach of a home insurance policy and alleged TPPA violations for failure to promptly pay their wrongfully denied insurance claim. Plaintiffs also alleged that Defendants violated the Texas Deceptive Practices Act ("DTPA") by engaging in various bad faith practices in violation of Chapter 541 of the Texas Insurance Code. Plaintiffs seek damages suffered as a result of Defendants' conduct, not to exceed $200,000, prejudgment and postjudgment interest, and attorney's fees. The action was removed to federal court by Allstate on May 29, 2020, based on diversity jurisdiction. Plaintiffs moved for summary judgment on their contractual and TPPA claims against Allstate on March 15, 2021, the deadline for filing dispositive motions.

Plaintiffs explain in their Motion that, while Mr. McKinney was named as a Defendant, he was never served with process and has not otherwise appeared in this action. With respect to their Motion and request for summary judgment on their contractual and TPPA claims against Allstate, Plaintiffs summarize the facts and supporting evidence as follows:

> Plaintiffs are the named insureds and holders of House & Home Policy No. 829967490 ("the Policy"), which was provided and underwritten by Defendant Allstate Vehicle and Property Insurance Company ("Defendant"). *See* Appendix,

---

* Allstate's motion to extend the discovery and expert deadlines was denied by separate order. Although the parties agreed to extend the discovery deadline to allow Plaintiffs to depose Allstate's adjuster and corporate representative after Allstate failed to go forward with an earlier agreed deposition date before expiration of the discovery deadline, any agreement to extend the discovery deadline is subject to the court's requirement that such agreements do not affect the trial setting, dispositive motion deadline, or pretrial submission deadline. *See* Scheduling Order ¶ 7 (Doc. 7). Thus, neither this discovery agreement nor Allstate's motion to extend the discovery and expert designation deadlines affected its deadline for responding to Plaintiffs' Motion, and no extension to do so under Rule 56(d) was ever requested by it.

**Memorandum Opinion and Order– Page 2**

p. 7. Plaintiffs' home, the insured property, is located in Dallas County at 1906 Heather Way, Richardson, Texas 75081. *See* Appendix, p. 7. The policy period began on November 17, 2018 and ended on November 17, 2019. *See* Appendix, p. 7.

The Policy provides coverage for "sudden and accidental direct physical loss" to Plaintiffs' Dwelling, Other Structures, and Personal Property. *See* Appendix, p. 30. Notably, "[w]indstorm" is specifically named as a covered peril. *See* Appendix, p. 30. Importantly, the Policy also provides Additional Living Expense coverage. *See* Appendix, p. 8[.] The limits of liability and deductibles applicable to the relevant coverages are as follows:

**Coverage detail** for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection | $206,783 | • $2,500 Windstorm and Hail<br>• $2,500 All other perils |
| Other Structures Protection | $20,679 | • $2,500 Windstorm and Hail<br>• $2,500 All other perils |
| Personal Property Protection | $124,070 | • $2,500 Windstorm and Hail<br>• $2,500 All other perils |
| Additional Living Expense | Up to 24 months not to exceed $20,679 | |

*See* Appendix, p. 8. Importantly, all premiums were paid, and the Policy was in effect at the time of the loss made the basis of this lawsuit. *See* Appendix, p.1 (showing the coverages that were on the policy at the time of loss of October 29, 2019); *see also* Appendix, p. 5 (admitting that "as of the Date of Loss the Policy was in full force and effect" and that "as of the Date of Loss all premiums were fully satisfied under the Policy.")[.]

According to the National Centers for Environmental Investigation's Storm Events Database, there were several tornadoes reported over the Dallas, Texas area on October 20, 2019. *See* Appendix, p. 76. One of those tornadoes passed over Plaintiffs' residence. *See* Appendix, p. 76. The tornado in question was characterized as an EF3 tornado, with windspeeds ranging from 136 mph to 165 mph. *See* Appendix, p. 76 The tornado traveled a total of 15.6 miles and was 1,300 yards wide. *See* Appendix, p. 76. Notably, the historical weather data and plot maps show the center of the tornado passed approximately 500 feet from Plaintiffs' property. *See* Appendix, p. 76. Although Plaintiffs' property was spared the full force of the EF3 winds, due to the 3,900 foot-width of the tornado, the property was still located within the path of the tornadic winds, resulting in substantial damage. *See* Appendix, pp. 78-81 During the tornado, Plaintiffs and their three children sheltered inside their home as it shook from the strength of the winds. *See* Appendix p. 127.

Initially, Plaintiffs only noticed damage to their fence. Claudia depo p. 17. Unaware of the full extent of damage, and due to busy schedules, Plaintiffs did not initially report the claim to Defendant. *See* Appendix, p. 128. However, within approximately a month of the tornado, Plaintiffs began noticing water stains on the

interior of their home, none of which had existed prior to the tornado. *See* Appendix, p. 129. Upon noticing the stains, Plaintiffs contacted a restoration company to inspect their home. *See* Appendix, pp. 129-130. The restoration company informed Plaintiffs that many of the wall and ceiling coverings would have to be removed in order to prevent mold growth and to allow for complete drying of the property prior to any eventual repairs. *See* Appendix, p. 130.

On November 25, 2019—after noticing the extent of interior damage—Plaintiffs reported the damage to Defendant with the corresponding date of loss of October 20, 2019. *See* Appendix p. 142. The loss was identified as Claim Number 0569530370 with a "Loss Description" of "Wind" and the associated "Peril" named as "Windstorm." *See* Appendix p. 142. Prior to Defendant's field inspection, the restoration company began their mitigation work on Plaintiffs' home, including removal of wall and ceiling coverings. *See* Appendix, p. 137. Consequently, Plaintiffs and their three children vacated the home on November 29, 2019 and moved into a hotel. *See* Appendix, pp. 130, 133-134.

On December 5, 2019, Defendant sent Stephen McKinney ("McKinney") to perform a field inspection of Plaintiffs' property. *See* Appendix, p.132. Plaintiffs met McKinney at their home and attended the inspection. *See* Appendix, p. 132. During the inspection, McKinney told Plaintiffs that although he didn't have authority to make a coverage decision, he observed 80 to 90 percent loss in damage to the home and was going to escalate the claim to someone who had authority to make a coverage decision. *See* Appendix, p. 132. Thereafter, on December 10, 2019, McKinney sent Plaintiffs a letter denying coverage for the claim. *See* Appendix, p. 145-145. Defendant and McKinney's basis for the denial is as follows:

> We were unable to provide payment on this claim because: Your policy covers sudden and accidental coverage. It excludes maintenance and improper repairs. Your roof was improperly repaired in June of 2016 with the claim number 0430737221. As a result, water entered your dwelling and damaged the interior. The numerous water stains on the drywall indicate these leaks were reoccurring and not properly maintained and/or addressed over a period of time.

*See* Appendix, p. 146.

The prior claim relied upon by Defendant in denying the tornado claim was a covered hail claim which was paid by Defendant approximately three (3) years prior. *See* Appendix, p. 147. More specifically, following a hail loss that occurred on June 20, 2016, Defendant inspected Plaintiffs' property on October 7, 2016, provided coverage for the loss, and paid Plaintiffs a total of $10,683.12. *See* Appendix, p. 147. Importantly, Plaintiffs used the payment to *fully* replace their roof in 2017. *See* Appendix, p. 125; Appendix p. 8. Between the time of the roof

replacement in 2017 and the tornado on October 20, 2019, Plaintiffs did not experience any leaks or other issues with their new roof. *See* Appendix, p. 125-126; Appendix p. 152.

On or about December 10, 2019, following Defendant's denial of the tornado claim and refusal to pay for living expenses, Plaintiffs and their children were required to check out of their hotel and move into a cheaper apartment. *See* Appendix pp. 131, 135-136. To date, Plaintiffs have incurred $21,268.54 in living expenses since vacating their home. *See* Appendix, pp. 156-168. Plaintiffs reported personal property damage to Defendant in the amount of 2,183.93. *See* Appendix, pp. 169-175.

After Defendant's denial of the claim, Plaintiffs obtained their own assessment and evaluation of the cause and scope of the tornado loss. More specifically, Mr. Peter de la Mora, P.E. of PE Service, determined that the cause of the damage to Plaintiffs' property was the EF3 tornado that occurred on October 20, 2019. *See* Appendix, pp. 56-119. Mr. James Wesselski, a licensed public insurance adjuster of WesGroup Consulting, LLC, concluded that Plaintiffs' property sustained $130,920.17 in dwelling damage and $15,708.50 in other structure damage caused by wind and water intrusion related to the tornado that occurred on October 20, 2019. *See* Appendix, pp. 177-303.

Pls.' Summ. J. Br. 3-6 (footnote omitted).

## II. Plaintiffs' Summary Judgment Evidence

In support of their Motion, Plaintiffs submitted and rely on the following evidence:

Exhibit A – Certified House & Home Policy No. 829967490

Exhibit B – Defendant's Responses to Plaintiffs' First Request for Admission

Exhibit C – PE Service Preliminary Report of Findings Tornado Damage Investigation

Exhibit D – Oral Deposition of Claudia A. Lopez Orozco

Exhibit E – Claim File Documents for Claim No. 0569530370

Exhibit F – Oral Deposition of Alejandro Martinez Perez

Exhibit G – Receipts for Additional Living Expenses

Exhibit H – Receipts for Personal Property Damage

Exhibit I – WesGroup Consulting Report and Xactimate Estimate

Exhibit J – OCCC Texas Credit Letter

### III.     No Response Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could

**Memorandum Opinion and Order– Page 6**

not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

As noted, Allstate filed no response in opposition to Plaintiffs' Motion. This failure, of course, does not permit a court to enter a "default" summary judgment. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). When no response is filed, such failure does permit the court to accept as undisputed the evidence set forth in support of a movant's motion for summary judgment. *Id.* Accordingly, the court accepts Plaintiffs' facts and evidence as undisputed.

## IV. Discussion

### A. Breach of Contract

"In Texas, '[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

Plaintiffs' evidence and the undisputed facts in their summary judgment motion that pertain to this claim establish all of the elements of a breach of contract claim under Texas law. Plaintiffs' evidence establishes that they had a valid contract with Allstate in the form of a home insurance policy that was in full force and effect when their home suffered damage in October 2019; that Plaintiffs performed as required by paying all premiums when due; that the windstorm caused damage to their home that is covered under the policy; that Allstate failed to pay Plaintiffs claim to recover benefits covered under the policy; and that Plaintiffs suffered covered damages totaling $169,491.60 and were entitled to recover $166,991.60, after deduction of their policy deductible of $2,500. Accordingly, there is no genuine dispute of material fact with respect to Plaintiffs' breach of contract claim, and they are entitled to judgment as a matter of law on this claim and damages totaling $166,991.60.

### B. TPPA

Plaintiffs' TPPA claim is based on its allegation that Allstate failed to: (1) failed to timely accept or deny coverage; and (2) pay Plaintiffs for their losses covered under their policy within the time required by the Texas Insurance Code. With respect to this claim, Plaintiffs, "in addition

to [their] claims for damages, [contend that they] are entitled to interest and attorneys' fees as set forth in § 542.060 of the Texas Insurance Code." Pls.' Orig. Pet. ¶¶ 31-32.

In their Motion, Plaintiffs similarly assert that they are entitled to summary judgment on their TPPA claim because they have established that their insurance claim is a covered loss under the policy, and Allstate failed to pay their insurance claim within the time provided by the Texas Insurance Code. Plaintiffs contend that, because they submitted their claim on November 25, 2019, and Allstate did not request any further information to make a coverage decision, it was required to pay their claim by December 10, 2019, in accordance with Texas Insurance Code sections 542.056, 542.057, and 542.058. Plaintiffs, therefore, argue that they are entitled to recover interest, pursuant to section 542.050(c), at a rate of 10 percent on the amount of their claim ($166,991.60) from December 10, 2019, to the date of judgment.

The court agrees that Plaintiffs are entitled to recover interest under the TPPA as a result of Allstate's failure to pay their claim for covered losses under the policy with the time prescribed by the Texas Insurance Code but determines that interest should be calculated from February 3, 2020, to the date a final judgment is entered in this action. Chapter 542 of the Texas Insurance Code, commonly referred to as the Texas Prompt Payment Act or TPPA, establishes a series of procedures for the prompt processing and payment of insurance claims. *Wellisch v. United Servs. Auto. Ass'n*, 75 S.W.3d 53, 57 (Tex. App.—San Antonio 2002, pet. denied). Section 542.060 of the Texas Insurance Code explains that interest awarded under this subsection is awarded as damages and begins to accrue on the date the claim was required to be paid:

> [I]if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy, in addition to the amount of the claim, simple interest on the amount of the claim as damages each year at the rate determined on the date of judgment by adding five percent to the interest rate determined under Section 304.003, Finance Code,

**Memorandum Opinion and Order– Page 9**

> together with reasonable and necessary attorney's fees. Nothing in this subsection prevents the award of prejudgment interest on the amount of the claim, as provided by law. Interest awarded under this subsection as damages accrues beginning on the date the claim was required to be paid.

Tex. Ins. Code Ann. § 542.060(c).

Sections 542.056, 542.057, and 542.058 set forth the requirements and timing for an insurer to accept or reject a claim and pay a claim. Section 542.056 requires an insurer to notify a claimant in writing of its acceptance or rejection of a claim "not later than the 15th business day after the date the insurer receives all [information] required by the insurer to secure final proof of loss." *Id.* § 542.056(a). Section 542.057 further provides: "[I]f an insurer notifies a claimant under Section 542.056 that the insurer *will pay a claim or part of a claim*, the insurer shall pay the claim not later than the fifth business day after the date notice is made." *Id.* § 542.057(a) (emphasis added).

Sections 542.056 and 542.057 and the deadlines included in these sections do not apply to Plaintiffs' TPPA claim because it is undisputed that Allstate *denied* Plaintiffs' claim. Moreover, Allstate did so by December 10, 2019, not later than 15 business days after Plaintiffs submitted their claim on November 25, 2019, and Allstate obtained all information needed after inspecting Plaintiffs' property on December 4, 2019. Accordingly, section 542.058's sixty-day deadline for paying a claim applies, not section 542.057's five business day deadline.

To ensure timely processing and payment of claims, section 542.058(a) requires the insurer to pay a claim within sixty days of receiving "all of the items, statements, and forms reasonably requested and required" of the claimant and states that the insurer shall pay damages as provided by section 542.060 if it fails to do so. *Id.* § 542.058(a). Thus, interest awarded on Plaintiffs' claim as damages in this case begins to accrue on the date their claim was required to be paid under section 542.058—not later than 60 days after Allstate inspected Plaintiff's property on December

**Memorandum Opinion and Order– Page 10**

4, 2019. Because Allstate did not request any additional information after inspecting Plaintiff's property and before denying Plaintiffs' claim on December 10, 2019, Plaintiffs' evidence establishes that Allstate had all information needed to process their claim on December 4, 2019. Plaintiffs are, therefore, entitled to recover interest at the rate set forth in section 542.060(c)—10 percent of their claim—from February 3, 2020, to the date judgment is entered in this case.

Accordingly, there is no genuine dispute of material fact with respect to Plaintiffs' TPPA claim, and they are entitled to judgment as a matter of law on this claim. Because Plaintiffs' Motion does not resolve all the claims they have asserted in this action against Defendants, entry of judgment at this time is premature. The court will, therefore, delay calculating the amount of interest awarded under section 542.060(c) until a final judgment is entered in this case. Further, because Plaintiffs' Motion does not address their entitlement to attorney's fees under the TPPA and no evidence was submitted regarding the amount of attorney's fees, if any, that Plaintiffs are entitled to recover in this action, the court will address this issue postjudgment pursuant to Federal Rule of Civil Procedure 54(d).

**V.      Conclusion**

For the reasons discussed, the court **concludes** that no genuine dispute of material fact exists regarding Plaintiffs' claims against Allstate for breach of contract claim and violations of the TPPA such that Plaintiffs are entitled to judgment as a matter of law as to these claims. Accordingly, Plaintiffs' Motion with respect to these claims is **granted** to the extent set forth in this memorandum opinion and order.

As a result, only Plaintiffs' claim for alleged DTPA violations based on bad faith and violations of Chapter 541 of the Texas Insurance Code against Defendants remain. Plaintiff **shall** notify the court in writing by **May 5, 2021**, whether they intend to proceed with this claim against

Allstate, Mr. McKinney, or both. If Plaintiffs intend to proceed with this claim against Mr. McKinney, they must show good cause in writing by **May 5, 2021**, for their failure to effect service on him within the time (90 days) required by Federal Rule of Civil Procedure 4(m). They must also establish good cause to modify the Scheduling Order. If Plaintiffs fail comply with the court's instructions by this date, the court will dismiss the remaining claim for failure to prosecute or comply with a court order pursuant to Federal Rule of Civil Procedure 41(b), and also dismiss without prejudice the action against Mr. McKinney pursuant to Federal Rule of Civil Procedure 4(m).

**It is so ordered** this 28th day of April, 2021.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge